IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| BRIAN LEE WALKER, #15171035 | * * * | |
| Plaintiff, | * | |
| v. | * | No. 4:22-cv-00558-JJV |
| | * | |
| TIM RYALS, Sheriff, Faulkner County, *et al*. | * * * * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Brian Lee Walker ("Plaintiff") has filed this lawsuit, pursuant to 42 U.S.C. § 1983, seeking relief for constitutional violations.  (Doc. 2. )  Plaintiff says that while he was a pretrial detainee in the Faulkner County Detention Center ("FCDC"), Defendants Officer Douglas Huett, Corporal Jonathan Barnat, Sheriff Tim Ryals, and Chief Deputy Chad Wooley failed to protect him from being attacked by other prisoners on May 6, 2022, used excessive force against him, and denied him adequate medical care for his injuries.  (*Id*.)  Plaintiff brings these claims against Defendants in their official and individual capacities, and he seeks $500,000 in damages.  (*Id*.)  The parties have consented to the jurisdiction of a United States Magistrate Judge, and Plaintiff has requested a jury trial.  (Docs. 14, 69.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to dismissal of all claims.  (Docs. 70-72.)  Plaintiff has filed a Response.  (Docs. 76-78.)  Defendants have not filed a Reply, and the time to do so has expired.  *See* Local Rule 7.2(b).  After careful consideration and for the following reasons, the Motion for Summary Judgment is GRANTED in

part and DENIED in part.  Plaintiff's official capacity and inadequate medical care claims are DISMISSED with prejudice.  Defendants Ryals and Wooley are DISMISSED with prejudice.  Plaintiff may proceed to a jury trial with his failure to protect claim, as limited herein, and his excessive force claim against Defendants Huett and Barnat in their personal capacities only.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

**III.    FACTS**

The following facts are undisputed. *See* Pltf. Statement of Facts (Doc. 72); Dfts. Statement of Facts (Doc. 76). Plaintiff was arrested and booked into the FCDC on May 2, 2022. And he remained a pretrial detainee during the relevant events in this case.

On May 6, 2022, Plaintiff was moved to pod 212 where he did not have any known enemies. At approximately 11:00 a.m., detainee Waddle said he was the pod boss and demanded Plaintiff give him oral sex. A fight then ensued between Plaintiff and five other detainees. Officer Huett, who was on the second floor, heard the commotion, went downstairs, and saw the fight. Officer Huett did not carry pepper spray or a taser because he had not completed the necessary training. Pursuant to FCDC policy, Officer Huett called a "Code Orange" for back-up assistance, and Corporal Barnat, who was in the control booth, responded to that call. Importantly, the parties agree FCDC officers are "trained not to enter a cell/pod alone" when there is a fight. (Doc. 76 at ¶ 9, 97). Instead, they are instructed to call a Code Orange and wait for back-up assistance. (*Id.*) The parties disagree as to what happened next.[1]

Plaintiff says Corporal Barnat responded to the Code Orange within "1 $\frac{1}{2}$ to 2 minutes." (Doc. 31 at 3.) When Officer Huett and Corporal Barnat entered the pod, detainee Groves was choking Plaintiff from behind and hitting him while Plaintiff was trying to fight back. *See* Verified Complaint (Doc. 2); Pltf. Deposition (Doc. 72-8 at 29, 42-49); Pltf. Affidavit (Doc. 77-1); Detainee Price's Affidavit (Doc. 78-1). After returning to the pod, Officer Huett and Corporal Barnat

---

[1] In summary judgment pleadings, Plaintiff makes the conclusory allegation that he is entitled to an adverse inference because Defendants failed to preserve a video recording of the incident. (Doc. 77 at 2.) But that issue must be raised in a properly supported motion. *See* Fed. R. Civ. P. 37(e); *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 364 (8th Cir. 2023); *Stevenson* v. *Union Pac. R.R. Co.,* 354 F.3d 739, 746-748 (8th Cir. 2004).

3

allegedly "stood by for several minutes" watching Groves beat Plaintiff. (Doc. 77-1 at 1.) Plaintiff had a cut over his right eye that was bleeding profusely and preventing him from seeing. Plaintiff also says he had a busted lip, and he may have lost consciousness for a brief moment. Nevertheless, Plaintiff, who had his back towards both Defendants, heard Corporal Barnat tell him to get down on the ground. Plaintiff says he responded: "Hold on. Hold on. I'm getting on the ground." (Doc. 72-8 at 46.) And he was attempting to do so when Corporal Barnat shot him with a taser from behind. The prongs landed on the back of Plaintiff's left forearm close to his elbow, Corporal Barnat shocked Plaintiff twice, and the fight ended. Defendants Huett and Barnat then escorted Plaintiff to the infirmary where he was examined by Nurse Hope. During the exam, Corporal Barnat took the pliers from Nurse Hope and removed the taser prongs, which caused Plaintiff to bleed. Nurse Hope said Plaintiff needed to go to the hospital to have stitches for a cut on his right eyelid and have x-rays taken of his wrist and index finger. But Corporal Barnat refused to do and escorted Plaintiff to a new pod away from his attackers.

      Defendants Huett and Barnat tell a different version of what happened. *See* Huett's Affdvt. (Doc. 72-13), Barnat's Affdvt. (Doc. 72-12), Incident Report (Doc. 72-5). Defendants say when they arrived at the pod, which was within a minute of the Code Orange being called, Plaintiff and Groves were still fighting. Corporal Barnat ordered Plaintiff to stop fighting and get on the ground. Plaintiff did not comply. Corporal Barnat then drew his taser and warned Plaintiff he would use it if they did not get on the ground. At that point, Plaintiff allegedly turned towards both officers with his fists balled up and started walking in their direction. Corporal Barnat then fired the taser, Plaintiff lifted his left arm to deflect it, and the prongs landed in his forearm. Corporal Barnat then administered a two to five second burst which caused Plaintiff to go down towards the floor. Corporal Barnat announced on the radio that he had used the taser and ordered Plaintiff to put his

hands behind his back. But instead of doing so, Plaintiff attempted to get back up. Corporal Barnat then administered another two to five second burst. At that point, Plaintiff complied with the instructions, was handcuffed, and went to the infirmary. Corporal Barnat says Nurse Hope removed the taser prongs, treated Plaintiff's eye injury, examined him, and cleared him to return to housing without any further medical treatment.

The parties agree Defendants were not involved in any of Plaintiff's medical care after May 6, 2022. (Docs. 72, 76.) They also agree x-rays taken of Plaintiff's wrists and hands on May 12, 2022 and December 9, 2022 were normal. Finally, it is undisputed eye examinations performed by an optometrist and retina specialist on May 13, 2022, December 12, 2022, and December 20, 2022 could not find an objective basis for Plaintiff's subjective complaints of floaters and other visual disturbances in his right eye. (*Id.*)

IV. **ANALYSIS**

    A. **Official Capacity Claims, Inadequate Medical Care Claims, and all claims against Defendants Ryals and Wooley**

In his Response, Plaintiff concedes his "official capacity claims, as well as all claims against Ryals and Wooley" should be dismissed with prejudice. (Doc. 77 at 1). Plaintiff does not mention the inadequate medical care claim he raised in his Complaint against Ryals, Wooley, and Barnat.[2] (Doc. 77, 78, 79) Thus, it appears Plaintiff only wishes to proceed with his failure to protect and excessive force claims against Defendants Huett and Barnat.

Nevertheless, and in an abundance of caution, I also conclude Defendants are entitled to summary judgment on the inadequate medical care claim for several reasons. First, the parties

---

[2] In the Complaint, Plaintiff alleged: (1) Barnat did not let him go to the hospital on May 6, 2022, as recommended by Nurse Hope; and (2) Defendants Ryals and Woolsey failed to take corrective action after reading his medical grievances. (Doc. 2).

agree (Docs. 72, 76 at ¶ 34) none of the Defendants were personally involved in Plaintiff's medical care after May 6, 2022. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 actions, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). And there is no evidence Defendants were, subjectively, deliberately indifferent to Plaintiff's medical needs after that date. *See Presson v. Reed*, 65 F.4th 357, 367 (8th Cir. 2023) (to proceed to trial on an inadequate medical care claim, a pretrial detainee must show the defendants "recognized that a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk") (emphasis in the original); *Smith v. Lisenbe*, __ F.4th __, 2023 WL 4483774, at *3 (8th Cir. July 12, 2023) (jail officials without medical training may defer to a medical professional's decisions regarding appropriate medical care). Finally, and importantly, there is no evidence Plaintiff was harmed by any delay in receiving medical care for his injuries. *See Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021) (to avoid summary judgment, a plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (same). Thus, Plaintiff's official capacity claims, inadequate medical care claims, as well as all claims against Defendants Ryals and Woolsey are dismissed with prejudice.

    **B.   Qualified Immunity**

Defendants Huett and Barnat argue they are entitled to qualified immunity from the failure to protect and excessive force claims raised against them in their individual capacities. Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20

F.4th 1199, 1204 (8th Cir. 2021).  Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide.  *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).  Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019).

Plaintiff argues qualified immunity does not apply to § 1983 actions because the original 1871 version of the statute said state actors were liable for constitutional violations "notwithstanding" any contrary state law or custom, which Plaintiff believes includes the common law doctrine of qualified immunity.  Plaintiff says in 1874 the "notwithstanding" clause was <u>unintentionally</u> omitted from § 1983 when the Revised Statutes, which later became the U.S Code, were written.  Thus, Plaintiff reasons § 1983 should impose constitutional liability on state actors and abrogate any contrary exceptions such as the qualified immunity doctrine.  While that may be what the drafters' intended, I must follow the plain language of the statute as it currently stands and the numerous binding cases from the United States Supreme Court holding qualified immunity applies to § 1983 actions.  *See, e.g., Rivas-Villegas v. Cortesluna,* 142 S.Ct. 4, 7-8 (2021) (applying qualified immunity to § 1983 excessive force and failure to protect claims); *Pearson*, 555 U.S. at 231 (2009) (qualified immunity applies to § 1983 claims); *Procunier v. Navarette*, 434 U.S. 555, 561 (1978) (explaining that, when enacting § 1983, Congress did not intend to revoke common-

law immunities afforded to government officials such as qualified immunity, and thus, prisoner officials may raise qualified immunity in a § 1983 action); *Pierson v. Ray,* 386 U.S. 547, 557 (1967) (first recognizing that § 1983 did not abolish common law immunities). Revision of the current version of § 1983 to comply with what Plaintiff believes was the original drafters' intentions is a matter for Congress, and not this Court. Thus, I find no merit to Plaintiff's argument. I will now determine whether qualified immunity applies to either of Plaintiff's remaining claims.

1. **Failure to Protect Claim Against Defendants Huett & Barnat**

Because the parties agree Plaintiff was a pretrial detainee, his failure to protect claim falls under the Fourteenth Amendment. *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021). Nevertheless, the Eighth Circuit has applied the same standard to failure to protect claims raised by pretrial detainees under the Fourteenth Amendment as those raised by convicted prisoners under the Eighth Amendment. *Id.*

A "constitutional claim does not lie every time one inmate attacks another." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018). Thus, to defeat qualified immunity and proceed to trial on his failure to protect claim, there must be evidence that: (1) objectively, there was a substantial risk harm to Plaintiff; and (2) subjectively, Defendants knew of and deliberately disregarded that substantial risk of serious harm. *See Id; Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019). As to the second element, deliberate indifference is a high standard that requires more than negligence or even gross negligence. *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010). Instead, it requires "proof of a reckless disregard of the known risk." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013).

In this case, the parties agree the fight that erupted on May 6, 2022 was a surprise. There is no constitutional duty to prevent a surprise attack. *See Patterson*, 902 F.3d at 852; *Schoelch v.*

*Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010) (same).  Thus, the issue here is whether Defendants failed to properly respond once that fight started.

In the Complaint, Plaintiff says Officer Huett was deliberately indifferent because he called for back-up assistance rather than using mace or otherwise attempting to stop the fight on his own.  (Doc. 2.)  However, the parties agree Officer Huett did not carry mace, a taser, or any other device because he had not been trained, and the FCDC policy required him to call for back-up assistance instead of entering the pod alone.  (Doc. 76 at ¶ 6, 9).  The Eighth Circuit has recognized unarmed officers do not act with deliberate indifference when they call for back-up assistance rather than putting themselves in harms way to stop a fight between prisoners.  *See Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995).  And this is especially true when the inmates outnumber the guards. *See Story v. Cashion,* No. 14-1724, 2014 WL 4745953 (8th Cir. Sept. 25, 2014);  *Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989); *Williams v. Willits,* 853 F.2d 586, 591 (8th Cir. 1988). That law is particularly applicable here because the parties agree Officer Huett called for back-up assistance, as his training required, rather than attempting on his own to stop a fight between six inmates in an open pod containing numerous detainees.  Because there is no evidence of deliberate indifference at this point, I conclude Defendant Huett is entitled to qualified immunity on this specific failure to protect claim.  *See Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (deliberate indifference is a "callous disregard or reckless indifference in responding to the risk").

Plaintiff also raises a second failure to protect claim.  Specifically, in his deposition and affidavit, Plaintiff says when Officer Huett returned to the pod with Corporal Barnat, they both watched inmates beat him for several minutes before intervening.  (Doc. 72-8 at 26, 36-37; Doc. 77-1.)  "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."

9

*Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994); *see also Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) ("gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective," violates "evolving standards of decency," and constitutes an Eighth Amendment violation). Whether Officer Huett and Corporal Barnat watched the fight before they intervened, how long they did so, and why they may have done so remain disputed issues of material fact that, depending on how they are resolved, could support a finding of deliberate indifference. Because the above failure to protect law was clearly established prior to the May 2022 fight, I conclude Officer Huett and Corporal Barnat are not entitled to qualified immunity on this failure to protect claim. *See Cohrs v. Norris,* No. 99-1571, 2000 WL 433986 (8th Cir. Apr. 24, 2000) (denying qualified immunity when prisoner alleged guards saw a prisoner being attacked but did nothing); *Martinez v. Norris*, No. 17-3234, 2019 WL 495137 (8th Cir. Feb. 8, 2019) (same).

### 2. Excessive Force Claim Against Defendant Barnat

Unlike a failure to protect claim, an excessive force claim raised by a pretrial detainee under the Fourteenth Amendment uses a different legal standard than the same claim raised by a convicted prisoner under the Eighth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Specifically, to prevail on an excessive force claim, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. Unlike a failure to protect claim, the defendant's state of mind is not a matter a plaintiff must prove. *Id*. And, objective reasonableness turns on the "facts and circumstances of each particular case." *Id*. at 397. When determining whether the use of force was objectively reasonable, the fact finder may consider the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to temper or limit the amount

of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id*.; *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017).

Corporal Barnat argues he is entitled to summary judgment based on his version of events, *i.e.,* that he tased Plaintiff after he failed to obey several orders to get on the ground and approached the officers in an aggressive manner.  But, as mentioned at the beginning of this Memorandum and Order, at the summary judgment stage I must construe the evidence in the light most favorable to Plaintiff.  And Plaintiff says in his deposition, which is partially supported by a witness's affidavit, that he was attempting to comply with orders, had announced he was trying to do so, and was being choked by another prisoner when Corporal Barnat tased him from behind.  (Doc. 72-8 at 39-49; Doc. 78-1.)  Those facts, if found to be true by a jury, would support a finding that Corporal Barnat's use of force was objectively unreasonable.

Corporal Barnat also says he is entitled to summary judgment because it is undisputed the injuries caused by the tasing (which were two small puncture wounds that were cleaned and required no further medical treatment) were insignificant.   But the de minimis injury rule was abrogated many years ago. *Wilkins v. Graddy*, 559 U.S. 34, 37-38 (2010); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013); *Chambers v. Pennycook*, 641 F.3d 898, 901 (8th Cir. 2011). Instead, the relevant inquiry is whether the amount of force used, and not the extent of the injury, was de minimis. Specifically, the Eighth Circuit has explained, "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of the force applied, is not in and of itself a threshold requirement for proving" an excessive force claim. *Santiago*, 707 F.3d at 990; *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).  In other words, "it is logically possible to prove an excessive use of force that caused only a minor injury.

11

*Chambers*, 641 F.3d at 906 (emphasis in the original). Here, the parties agree Plaintiff was shot with a taser and shocked twice, which is more than a de minimis amount of force. *See e.g.*, *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 897 (8th Cir. 2014) ("non-violent, non-fleeing subjects have a clearly established right to be free from the use of tasers"); *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012) (use of taser on an unarmed suspect, who did not resist arrest, did not threaten the officer, did not attempt to flee, and did not behave aggressively was unreasonable). And, because that law was clearly established before May 2022, I conclude Defendant Barnat is not entitled to qualified immunity on this excessive force claim.

## V.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 70) is GRANTED in part and DENIED in part.

2. Plaintiff's official capacity and inadequate medical care claims are DISMISSED with prejudice.

3. Defendants Ryals and Wooley are DISMISSED with prejudice.

4. Plaintiff may proceed to a jury trial with his failure to protect claim, as limited herein, and his excessive force claim against Defendants Huett and Barnat in their personal capacities only.

DATED this 28th day of July 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE